**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| CHANT & COMPANY A PROFESSIONAL LAW CORPORATION, and CHANT YEDALIAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FUTUREPLAN ADMINISTRATIVE SERVICES, LLC, and ASCENSUS, LLC,<br><br>Defendants. | **CIVIL ACTION NO.________________**<br><br>**COMPLAINT- CLASS ACTION AND JURY DEMAND** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs, by their counsel of record, bring this action on their own behalf and on behalf of all others similarly situated, and allege the following upon personal knowledge, or where there is not personal knowledge, upon information and belief:

## PARTIES

### Chant & Company A Professional Law Corporation ("C&C")

1. Plaintiff, Chant & Company A Professional Law Corporation (hereinafter sometimes referred to as "C&C"), is a professional corporation formed and incorporated in the State of Texas. C&C is also a small business corporation with S Corporation ("S-Corp") status.

### Chant Yedalian

2. Plaintiff, Chant Yedalian, is an employee of C&C. Mr. Yedalian is also the sole shareholder of C&C with a 100% ownership of C&C's stock. Mr. Yedalian is and, at all times relevant hereto, was a resident of the State of Texas.

**FuturePlan Administrative Services, LLC and Ascensus, LLC ("Defendants")**

3. Defendant FuturePlan Administrative Services, LLC is a limited liability company formed in Delaware with its principal place of business at 200 Dryden Road, Dresher, PA 19025.

4. Defendant Ascensus, LLC is a limited liability company formed in Delaware with its principal place of business at 200 Dryden Road, Dresher, PA 19025.

5. FuturePlan Administrative Services, LLC and Ascensus, LLC are collectively referred to as "Defendants."

6. At all times mentioned in this Complaint, Defendants, and each of them, were the agents, employees, joint venturer, alter ego, and/or partners of each other and were acting within the course and scope of such agency, employment, joint venturer, alter ego and/or partnership relationship and/or each of the Defendants ratified and/or authorized the conduct of each of the other Defendants.

**THE CHANT & COMPANY A PROFESSIONAL LAW CORPORATION DEFINED BENEFIT PENSION PLAN ("DB Plan")**

7. C&C, as an employer of Chant Yedalian and for the benefit of Mr. Yedalian as an employee, sponsors a defined benefit pension plan known as Chant & Company A Professional Law Corporation Defined Benefit Pension Plan (hereinafter sometimes referred to as the "DB Plan").

8. Defendants know, among other things, that the DB Plan is for the benefit of Chant Yedalian and his retirement. Stated another way, Defendants know that Mr. Yedalian is a beneficiary of the DB Plan and that harm caused to the DB Plan results in harm to Mr. Yedalian, his retirement, and his retirement funds and financial interests.

## SUMMARY OF FACTS

9. Defendants are among the largest, if not the largest, provider of pension plan and other retirement related services and goods in the United States. On their website, Defendants claim they are "powering savings plans across America, providing products and expertise that help nearly 16 million people save for a better today and tomorrow. Ascensus has more than $892 billion in assets under administration and employs more than 5,000 associates as of June 30, 2025."[1]

10. Small businesses who desire to maintain a legally compliant pension plan cannot do so on their own. This is because a legally compliant pension plan requires reliance on actuaries and other professionals who are experts in the field of pension plans. Defendants exploit this reality and solicit businesses, particularly small businesses, throughout the United States by offering products and services concerning pension plans.

11. Like other small businesses in the United States, C&C and Chant Yedalian are neither actuaries nor experts in the field of pension plans. Mr. Yedalian is a consumer and class action lawyer and his small business, C&C, is a professional law corporation.

12. On or around May 30, 2024, Defendants sent, through the United States Postal Service, an unsolicited mailer to both Plaintiffs addressed as follows:

CHANT & COMPANY PROF LAW CORP.
CHANT YEDALIAN
709 ALEXANDER LN.
ROCKWALL, TX 75087-4174

The mailer included pricing, in the total amount of $2,700.00, for IRS Restatement Fee charges.

---

[1] Available at https://www.ascensus.com/about-us/press-room/news/ascensus-announces-planned-leadership-succession/ (last viewed October 18, 2025).

13. According to Defendants, in order for a defined benefit pension plan to be compliant with the Internal Revenue Service ("IRS"), the plan documents must be re-written or "restated" every six (6) years to incorporate changes in law and regulations. Once "restated" the pension plan documents are supposed to remain valid for six (6) years.

14. Defendants prepare general form "restatement" pension plan documents which they then submit to the IRS seeking an IRS opinion letter that the form pension plan documents comply with Internal Revenue Code pension plan requirements. Once Defendants obtain an opinion letter from the IRS concerning compliance with the Internal Revenue Code, Defendants then market and offer for sale, en masse to thousands of small businesses, the form "restatement" as a "pre-approved" form defined benefit pension plan that is supposed to be valid for six (6) years.

15. While Defendants are not the only companies in the pension plan industry that prepare, seek approval for and market and offer for sale "pre-approved" "restatement" forms, each "restatement" is associated with an IRS serial number.

16. Thus, the IRS serial number corresponding to Defendants' form "restatement" pension plan corresponds only to Defendants' form. Similarly, a form "restatement" pension plan prepared, marketed and offered for sale by another company in the pension plan industry will have its own, and different, IRS serial number.

17. In order for a business like C&C to have its DB Plan compliant with the law and for the "restatement" to actually remain compliant for the six (6) years that Defendants promised it would be valid, each year Defendants must undertake tasks, including but not limited to, for example, preparing an annual IRS Form 5500-EZ. The annual Form 5500-EZ requires, among other things, identification of the IRS serial number corresponding to Defendants' "pre-

approved" "restatement" pension plan. If Defendants refuse to provide such annual tasks concerning the plan, the plan would no longer be compliant and the six (6) year validity period represented by Defendants would be a materially false representation. Moreover, setting aside for a moment the consequences for future year compliance and validity periods, if Defendants refuse to provide such annual services during the middle of a plan year, thereby effectively abandoning clients and beneficiaries during the middle of a plan year, that would have dire consequences, because clients and beneficiaries are already locked in to Defendants' plan and corresponding IRS serial number for the current plan year and would not be able to get another provider to fulfill pension plan requirements for the current plan year. This would result in the severe loss of retirement savings because the pension plan would no longer be in legal compliance and huge penalties and losses for non-compliance would follow. In addition, a cascade of further consequences and government and IRS penalties would also result as further described in paragraph 35 below.

18. On or about July 10, 2024, Plaintiffs paid to Defendants the $2,700.00 for the "restatement" related charges.

19. Nearly eleven (11) months after Plaintiffs paid to Defendants the $2,700.00, in or about late May through June 2025 Defendants made a take-it-or-leave-it, non-negotiable, ultimatum, which is nothing short of extortion-like conduct. Defendants required Plaintiffs to sign a document waiving rights. Defendants called the document a "service agreement." However, it is more appropriately called a dis-service document. The document is loaded with oppressive terms that have nothing to do with service, and instead try to force people/companies to give up or compromise substantial rights.

20. For example, but without limitation, the document, if signed:

a) waives various causes of action, including negligence claims such that Defendants could not be held responsible for their wrongs;

b) limits both the amount of damages available as well as entirely waives some damages altogether, including the waiver of all special, indirect, incidental, consequential or similar damages, including lost revenue, lost profits and lost or damaged data, even if Defendants were advised of the possibility of such damages;

c) purports to require the application of New York law, and purports to artificially manufacture venue and jurisdiction by vesting exclusive venue and jurisdiction in New York, despite the fact that Plaintiffs and Defendants are not citizens or residents of the State of New York, and there are no known facts that have any connection whatsoever to New York;

d) purports to impose a time limit on the assertion of claims;

e) purports to allow termination of service on 60 days notice;

f) purports to waive the right to a jury trial;

g) purports to require arbitration, and that it must take place in New York;

h) purports to waive class actions, collective actions, representative actions, and group claims, and purports to bar the consolidation of claims.

21. None of these waivers are required. Indeed, the "restatement" pension plan documents which Defendants submitted to the IRS, and for which there is a corresponding IRS serial number, do NOT contain any of these terms. These are all unilaterally contrived by Defendants.

22. Moreover, there is absolutely no consideration that would support Defendants' unilateral take-it-or-leave-it, non-negotiable, ultimatum. It is an astonishing extortion-like ultimatum with no corresponding benefit or consideration.

23. Imagine if another professional were to try something like this. For example, imagine a client who has hired and paid a lawyer for representation on a matter. Now imagine that the lawyer comes back eleven (11) months later and demands that the client sign a document waiving rights, and that unless the client does so, the client will be dropped and the monies the client paid would be forfeited. Imagine further that one of those waivers would waive rights for any negligence committed by the lawyer. Imagine further that if the client ever tried to pursue any claims against the lawyer they would have to do so in New York and under New York law, despite that there is absolutely no connection to New York. One can quickly understand how such conduct would not be tolerated by a court.

24. Similarly, there is no reason to tolerate Defendants' extortion-like and oppressive conduct. Yet, that has not stopped Defendants.

25. To the contrary, Defendants made their take-it-or-leave-it, non-negotiable, ultimatum several times and in several ways. Defendants said "we cannot accommodate, "[w]e cannot negotiate," "we are unable to make modifications to our service agreements," "the decision [is] to not accept any adjustments to the agreement."

26. Defendants also said this was "the final decision" and it was made by Defendants' "general counsel."

27. Defendants said "[t]he final decision of our general counsel is that we are unable to make modifications to our service agreements."

28. Defendants also said "[t]he decision was made by our general counsel on the decision to not accept any adjustments to the agreement."

29. Plaintiffs wanted the necessary pension plan service continued, but Defendants refused to continue service.

30. Defendants said the pension plan service will not continue unless Plaintiffs sign the document waiving rights.

31. Defendants said "if we are to move forward with providing services for you then we will need the service agreement signed without modifications."

32. This is extortion-like behavior where Defendants stopped providing service and refused to resume service unless substantial rights are waived.

33. Defendants' conduct is made all the more appalling, deliberate and malicious because Defendants hold, and are abusing, their special relationship and circumstances with Plaintiffs and members of the Class. Defendants assumed and hold a special relationship whereby they are entrusted with the fate of Plaintiffs' and the Class' retirement and pension plans. Instead of fulfilling their roles and duties under their special relationship, defendants have done the extreme opposite. Defendants have exploited their special relationship by leveraging their special relationship to try to extract the forced waiver of substantial rights from Plaintiffs and the Class. Defendants have thereby put Plaintiffs and the Class in a proverbial stranglehold—either succumb to Defendants' extortion-like ultimatum and waive substantial rights or face the severe loss of retirement savings because the pension plan would no longer be in legal compliance and huge penalties and losses for non-compliance would follow. In addition, a cascade of further consequences and government and IRS penalties would also result as further described in paragraph 35 below.

34. The deliberate and malicious nature of Defendants' conduct is further amplified by Defendants' actual knowledge. Defendants are in the pension plan industry and know, and it is their business to know, the reportings and filings required by the government. Defendants are thus well aware that Plaintiffs and the Class have reporting and filing requirements with the government, including the IRS. Defendants also know, and it is their business to know, that there will be a severe loss of retirement savings if the DB Plan or any other pension plan is no longer in legal compliance and huge penalties, including by the IRS, and huge losses for non-compliance would follow.

35. When Defendants refuse to continue necessary plan services, it results in, and Defendants know that it results in, a cascade of dire consequences, including but not limited to the following: (a) there would be a severe loss of retirement savings because the DB Plan is no longer in compliance with the law and huge penalties and losses for non-compliance would follow; (b) C&C cannot report or otherwise file its required tax returns with the IRS because annual pension plan requirements cannot be met, and this subjects C&C to additional and severe government penalties, including IRS penalties; (c) because C&C is an S-Corp, if C&C cannot file its annual tax returns, then Mr. Yedalian as shareholder of C&C cannot report or otherwise file his personal annual tax returns with the IRS, thereby subjecting Mr. Yedalian to severe government penalties, including IRS penalties.

36. But that did not stop Defendants or their general counsel from making, and repeating, their take-it-or-leave-it, non-negotiable, ultimatum.

37. Defendants and their general counsel acted in complete indifference to Plaintiffs' rights. Defendants expressed no remorse. Defendants' general counsel expressed no remorse.

38. Not once did Defendants or their general counsel express any concern about the distress and disruption they cause to Plaintiffs. Defendants said nothing even after Plaintiffs informed Defendants about the distress and disruption.

39. When Plaintiffs would not waive rights as demanded by Defendants, Defendants stopped providing service for the pension plan.

40. For the reasons explained above, Defendants conduct is all the more egregious since Defendants and their general counsel stopped service in the middle of Plaintiffs' current pension plan year. Even if Plaintiffs could find another company in the pension plan industry that they could turn to, such other company could not, and would not, use Defendants' "restatement" documents and would require new pension plan documents, resulting in disruption, time and thousands of dollars in additional expenses for future plan years. Even then, as explained above, because Plaintiffs are already locked in to Defendants' plan and corresponding IRS serial number for the current plan year, Plaintiffs would not be able to get another provider to fulfill pension plan requirements for the current plan year.

41. Plaintiffs and the Class should not face such extortion-like conduct.

42. Nor should Plaintiffs have to face the consequences of Defendants' conduct including, but not limited to, the actual abandonment of Plaintiffs during the middle of the pension plan year. Due to Defendants' intentional, deliberate and malicious conduct, Plaintiff Mr. Yedalian has also suffered and continues to suffer severe mental and emotional distress, anguish and suffering.

43. This lawsuit seeks remedies on behalf of Plaintiffs and the Class, including restitution and disgorgement, damages, exemplary damages, declaratory, injunctive and other relief.

## JURISDICTION AND VENUE

44. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 class members, the proposed class contains at least one class member who is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum or value of $5,000,000.

45. Defendants solicited business in this judicial district, Plaintiffs' claims asserted herein arose in this judicial district and Defendants do business in and reside in this judicial district.

46. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that Defendants have done and continues to do business, and intentionally avail themselves of the markets within this district, and this is a class action case in which a substantial part of the acts and omissions giving rise to the claims occurred within this judicial district.

## CLASS ACTION ALLEGATIONS

47. Plaintiffs bring this class action on behalf of themselves and all other persons similarly situated pursuant to Rules 23(a), 23(b)(2)and 23(b)(3) of the Federal Rules of Civil Procedure.

48. The Class which Plaintiffs seeks to represent is defined as:

> All entities who, within six years from the date of filing this Complaint, paid any of Defendants a pension plan "restatement" fee and from such entities any of Defendants required the signing of a "service agreement" within two years from the date of filing this Complaint (the "Class").[2]

49. Excluded from the Class are Defendants and their directors, officers and employees. Also excluded from the Class are any justice, judge, or magistrate judge assigned to

[2] Plaintiffs reserve the right to amend or otherwise modify the Class definition and/or add sub-classes.

this action or who presides over any proceeding concerning this action, and any such justice's, judge's, or magistrate judge's spouse, or a person within the third degree of relationship to any of them, or the spouse of such a person.

50. Numerosity (Fed. R. Civ. P. 23(a)(1)): The Class is so numerous that joinder of all individual members in one action would be impracticable. The disposition of their claims through this Class action will benefit both the parties and this Court.

51. Based upon Defendants' own representations concerning the scale and nationwide scope of their extensive operations, Plaintiffs are informed and believe and thereon allege that there are, at a minimum, many thousands (*i.e.*, three thousand or more) of members that comprise the Class.

52. The exact size of the Class and identities of individual members thereof are ascertainable through Defendants' records, including but not limited to Defendants' sales and transaction records.

53. Members of the Class may be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, first-class mail, or combinations thereof, or by other methods suitable to this Class and deemed necessary and or appropriate by the Court.

54. Typicality (Fed. R. Civ. P. 23(a)(3)): Plaintiffs' claims are typical of the claims of the entire Class. The claims of Plaintiffs and members of the Class are based on the same legal theories and arise from the same unlawful conduct.

55. Plaintiffs and members of the Class each paid one or more of Defendants a "restatement" fee which was supposed to render their pension plan valid for six (6) years but

Defendants then turned around and, as a condition of continuing to service the plan, required the signing of a so-called "service agreement" purporting to waive Class members' rights.

56. Common Questions of Fact and Law (Fed. R. Civ. P. 23(a)(2) and (b)(3)): There are a well-defined community of interest and common questions of fact and law affecting the members of the Class.

57. The questions of fact and law common to the Class predominate over questions which may affect individual members and include the following:

(a) Whether Defendants' conduct of seeking and collecting from Plaintiffs and members of the Class a "restatement" fee which was supposed to render their pension plan valid for six (6) years is unlawful when, after collecting these fees, Defendants turned around and, as a condition of continuing to service the plan, required the signing of a so-called "service agreement" purporting to waive Class members' rights;

(b) Whether Defendants' conduct was fraudulent, intentional, knowing, malicious, and/or grossly negligent;

(c) Whether Plaintiffs and the Class are entitled to restitution, disgorgement, damages, exemplary damages, costs and or attorney's fees for Defendants' acts and conduct; and

(d) Whether Plaintiffs and the Class are entitled to declaratory relief and/or injunctive relief barring Defendants from extracting waivers from the Class and/or barring Defendants from abandoning Class members under the scheme alleged in this Complaint.

58. Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)): Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class which Plaintiffs seek to represent. Plaintiffs will fairly, adequately, and vigorously represent and

protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by counsel competent and experienced in the prosecution of class action litigation.

59. Superiority (Fed. R. Civ. P. 23(b)(1) and 23(b)(3)): A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be and if awarded to the Class are likely to be substantial, the actual damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiffs do not know of any other litigation already commenced by or against any member of the Class concerning Defendants' conduct at issue in this matter. The likelihood of individual Class members prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

60. Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(2)): A class action is also appropriate because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## CAUSES OF ACTION

## COUNT ONE

### Fraud

### (On Behalf of Plaintiffs and the Class as against Defendants)

61. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

62. Plaintiffs assert this claim on behalf of themselves and the Class against Defendants.

63. As described above, Defendants solicited and received $2,700.00 from Plaintiffs for a "restatement" that was supposed to render their pension plan valid for six (6) years but then, nearly eleven (11) months later, Defendants turned around and, as a condition of continuing to service the plan, required the signing of a so-called "service agreement" that waived substantial rights. On information and belief, and as pled in this Complaint, this practice of extracting "restatement" fees that was supposed to render a pension plan valid for six (6) years was also perpetrated on the Class whereby Defendants later turned around and, as a condition of continuing to service the plan, required Class members to sign the so-called "service agreement" that waived substantial rights.

64. When Plaintiffs would not waive rights as demanded by Defendants, Defendants stopped providing service for the pension plan.

65. Defendants' extortion-like conduct is all the more egregious since Defendants and their general counsel stopped service in the middle of the current pension plan year thereby causing substantial harm and injury to Plaintiffs. Small business owners already have enough on their plate without the likes of Defendants abandoning Plaintiffs and causing Plaintiffs distress,

anguish, disruption and other losses and consequences, including, but not limited to, the severe loss of retirement savings because the DB Plan is no longer in compliance with the law and huge penalties and losses for non-compliance will follow.

66. Plaintiffs justifiably and reasonably relied on Defendants' material representations that the "restatement" was required by the IRS and that it was supposed to render their pension plan valid for six (6) years. Plaintiffs also justifiably and reasonably relied on Defendants' representations, and based upon such reliance, Plaintiffs paid Defendants the $2,700.00 sought by Defendants.

67. Defendants' conduct was intentional, knowing and malicious. Indeed, even after Plaintiffs repeatedly pointed out to Defendants that their conduct was unlawful and was causing Plaintiffs distress and disruption, Defendants continued with their take-it-or-leave-it, non-negotiable, ultimatum demanding the waiver of substantial rights. As such, in addition to other remedies pled in this Complaint, exemplary damages are also sought against Defendants.

## CAUSES OF ACTION

## COUNT TWO

### Money Had and Received

### (On Behalf of Plaintiffs and the Class as against Defendants)

68. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

69. Plaintiffs assert this claim on behalf of themselves and the Class against Defendants.

70. As described above, Defendants solicited and received $2,700.00 from Plaintiffs for a "restatement" that was supposed to render their pension plan valid for six (6) years but then,

nearly eleven (11) months later, Defendants turned around and, as a condition of continuing to service the plan, required the signing of a so-called "service agreement" that waived substantial rights. On information and belief, and as pled in this Complaint, Defendants also perpetrated this scheme on the Class.

71. Extracting from Plaintiffs and the Class "restatement" fees that are supposed to render a pension plan valid for six (6) years but then refusing to continue plan services which thereby has the effect of reducing the validity period of the plan results in ill-gotten monies obtained and retained by Defendants which in equity and good conscience belongs to and should be restored to Plaintiffs and the Class.

## <u>CAUSES OF ACTION</u>

## <u>COUNT THREE</u>

### Negligence (Including Gross Negligence)

### (On Behalf of Plaintiffs and the Class as against Defendants)

72. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

73. Plaintiffs assert this claim on behalf of themselves and the Class against Defendants.

74. As described above, Defendants solicited and received $2,700.00 from Plaintiffs for a "restatement" that was supposed to render their pension plan valid for six (6) years but then, nearly eleven (11) months later, Defendants turned around and, as a condition of continuing to service the plan, required the signing of a so-called "service agreement" that waived substantial rights. On information and belief, and as pled in this Complaint, Defendants also perpetrated this scheme on the Class.

75. Extracting from Plaintiffs and the Class "restatement" fees that are supposed to render a pension plan valid for six (6) years but then refusing to continue plan services unless Plaintiffs and the Class agree to waive rights is an intentional, knowing, malicious and extreme departure from ordinary care, in a conscious indifference and complete disregard of Plaintiffs' and Class members' rights and welfare, resulting in the extreme risk of harm to Plaintiffs and the Class. As such, in addition to other remedies pled in this Complaint, exemplary damages are also sought against Defendants.

## CAUSES OF ACTION

## COUNT FOUR

### Intentional Infliction Of Emotional Distress

### (On Behalf of Plaintiff Yedalian as against Defendants)

76. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

77. Plaintiff Mr. Yedalian asserts this claim on behalf of himself against Defendants.

78. As described in this Complaint, Defendants engaged in intentional, malicious, extreme and outrageous extortion-like behavior where Defendants stopped providing service and refused to resume service unless substantial rights are waived.

79. Defendants knew the consequences of their conduct, including the knowledge that their conduct would cause, and was causing, Mr. Yedalian emotional distress but, despite such knowledge, Defendants continued their conduct. Indeed, Defendants relied on the known consequences of their conduct, including how severe the consequences, including emotional distress, would be, to try to leverage such as pressure in trying to extract the forced waiver of substantial rights from Plaintiffs. As explained in this Complaint, Defendants also exploited

their special relationship by leveraging their special relationship to try to extract the forced waiver of substantial rights from Plaintiffs.

80. Even if Defendants were to claim that their conduct is not intentional, there is no escaping that Defendants conduct is, at a minimum reckless, because Defendants knew or had reason to know their conduct would create a high degree of risk of harm to Plaintiffs, and they deliberately proceeded to act, and/or failed to act, in conscious disregard of, or indifference to that risk.

81. Due to Defendants' intentional, deliberate and malicious conduct, and through the exploitation of their special relationship, Defendants caused Mr. Yedalian to suffer and continue to suffer severe mental and emotional distress, anguish and suffering. As such, and in addition to other remedies pled in this Complaint, exemplary damages are also sought against Defendants.

**PRAYER FOR RELIEF**

82. WHEREFORE, Plaintiffs pray for judgment and relief against Defendants as follows:

A. An order certifying the Class and appointing Plaintiffs as the representative of the Class, and appointing counsel of record for Plaintiffs as counsel for the Class;

B. An award to Plaintiffs and the Class of restitution, disgorgement, and damages;

C. An award to Plaintiffs and the Class of exemplary damages (up to but not exceeding the fullest extent allowed under the Constitution of the United States and Texas law);

D. Declaratory relief declaring that Defendants' conduct described herein is unlawful;

E. Injunctive relief prohibiting Defendants from engaging in the misconduct described herein;

F. Payment of costs of suit herein incurred;

G. Payment of reasonable attorney's fees;

H. For pre-judgment and post-judgment interest; and

I. For such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Date: October 23, 2025

/s/ Chant Yedalian
Chant Yedalian
Texas State Bar No. 24126685
CHANT & COMPANY
A Professional Law Corporation
709 Alexander Ln
Rockwall, TX 75087
Telephone: 877.574.7100
Facsimile: 877.574.9411
Email: chant@chant.mobi

**COUNSEL FOR PLAINTIFFS AND THE PUTATIVE CLASS**